UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JASMINE KAISER, | ) |
| | ) CASE NO. C15-0842RSM |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER GRANTING PLAINTIFF'S |
| | ) MOTION FOR PARTIAL SUMMARY |
| CSL PLASMA INC., a corporation, | ) JUDGMENT |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment. Dkt. #50. Plaintiff asks the Court for an Order dismissing Defendant's defense that this action has been settled, and dismissing Defendant's affirmative defenses of failure to state a claim, preemption and primary jurisdiction. *Id.* Defendant opposes the motion and asks the Court to instead grant summary judgment in its favor on the bases of preemption and primary jurisdiction. Dkt. #57. For the reasons set forth below, the Court now GRANTS Plaintiff's motion, thereby denying Defendant's request for summary judgment in its favor.

## II. BACKGROUND

The parties do not dispute the following. On April 27, 2015, Plaintiff filed a discrimination action in King County Superior Court against Defendants. Dkt. #1-1. Defendant removed the action to this Court on the basis of diversity jurisdiction. Dkt. #1.

ORDER
PAGE - 1

In her Complaint, Plaintiff alleges that Defendant CSL Plasma Inc. operates and advertises a plasma center in Kent, Washington, where it pays individuals in exchange for plasma "donations." Dkt. #1-1 at ¶ 7. Plaintiff further alleges that she went to CSL Plasma intending to make a donation but was turned away because she is a transgender person. Dkt. #9. Plaintiff was apparently told that CSL Plasma had placed a "lifetime" deferment on any donation by Plaintiff, and that CSL Plasma would be notifying other, similar centers of the lifetime deferment, which essentially precluded her from ever "donating" her plasma at one of these centers. *Id.* As a result, Plaintiff filed the instant lawsuit alleging violations of Washington State's Consumer Protection Act (CPA), RCW 19.86.010 to .920, and the Washington Law Against Discrimination (WLAD), RCW 49.60.010 to .505. Through her suit, Plaintiff seeks the following relief:

> A. a monetary judgment against defendant CSL Plasma and in favor of Ms. Kaiser;
>
> B. declaratory relief pursuant to the Consumer Protection Act and the Washington Law Against Discrimination;
>
> C. injunctive relief pursuant to the Consumer Protection Act;
>
> D. exemplary damages, including exemplary damages under RCW 19.86;
>
> E. an award of attorney fees and costs to the extent authorized by Washington law, including the Washington Law Against Discrimination and the Consumer Protection Act; and
>
> F. such other relief as the Court deems just and proper.

Dkt. #1-1 at 4, *Prayer for Relief*.

On August 17, 2015, this Court remanded this matter back to King County Superior Court after finding that Defendant had failed to demonstrate by a preponderance of the

ORDER
PAGE - 2

evidence that the minimum amount in controversy requirement for subject matter jurisdiction had been met. Dkt. #24. The case was then closed. *Id.*

On April 12, 2016, Defendant again removed the action to this Court. Dkt. #27. Defendant alleged diversity jurisdiction as the basis of removal, and set forth new evidence of the requisite amount in controversy. *Id.* Removal was not challenged by Plaintiff, and the Court retained the case.

On or about November 2, 2106, the parties notified the Court that they had reached a settlement agreement and asked the Court to enter its standard Order of Dismissal. Dkt. #37. The Court entered its standard Order and again closed the matter. Dkt. #37. However, the Court's Order provided that "[i]n the event that the settlement is not perfected, any party may move to reopen the case, provided that such motion is filed within thirty (30) days of the date of this order." *Id.*

Just a few weeks later, on November 29, 2016, Plaintiff moved to reopen this case on the basis that the parties had not been able to perfect settlement. Dkt. #38. The motion was unopposed, and the Court re-opened the matter. Dkt. #40.

Defendant then filed a Motion to Confirm and Enforce Settlement Agreement, and a Motion for Protective Order, both of which this Court DENIED. Dkts. #45, #48, #63 and #64. At the same time, Plaintiff filed the instant motion, which is now ripe for review.

### III.    DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on

ORDER
PAGE - 3

summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

In this case, the parties do not dispute the material facts pertaining to the issues raised in the instant motion. Instead, they both argue that they are entitled to partial summary judgment as a matter of law. *See* Dkts. #50 and #57.

**B. Settlement Agreement**

As an initial matter, the Court grants Plaintiff's motion to the extent that it seeks a dismissal of the defense that this case has settled. As the Court previously ruled, no enforceable settlement agreement was reached between the parties. Dkt #63.

**C. Affirmative Defenses of Failure to State a Claim, Preemption and Primary Jurisdiction**

The Court next turns to Plaintiff's arguments that three of Defendant's affirmative defenses should be dismissed – failure to state a claim upon which relief may be granted,

preemption and primary jurisdiction. Dkt. #50 at 18-24. For the reasons discussed below, the Court agrees that each of these defenses should be dismissed.

   1. *Failure to State a Claim*

Plaintiff first argues that this Court should dismiss Defendant's affirmative defense of failure to state a claim, asserting that it is not properly asserted as an affirmative defense. Dkt. #50 at 18. Plaintiff relies on two out of District cases in support of that assertion. *Id.* at 18, fns. 63 and 64. Defendant does not respond to this argument. *See* Dkt. #57.

Federal Rule of Civil Procedure 8(c) provides, in pertinent part, that "a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. Pro. 8(c). The Ninth Circuit has held that "[t]he key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak*, 607 F.2d at 827 (citing *Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)); *accord Simmons v. Navajo*, 609 F.3d 1011, 1023 (9th Cir. 2010); *Schutte & Koerting, Inc. v. Swett & Crawford*, 298 Fed. Appx. 613, 615 (9th Cir. 2008). "Fair notice generally requires that the defendant state the nature and grounds for the affirmative defense." *Kohler v. Islands Restaurants, LP.*, 280 F.R.D. 560, 564 (S.D. Cal. 2012) (citing *Conley*, 355 U.S. at 47). "On the other hand, an affirmative defense is legally insufficient only if it clearly lacks merit 'under any set of facts the defendant might allege.'" *Id.* (quoting *McArdle v. AT & T Mobility, LLC*, 657 F. Supp. 2d 1140, 1149-50 (N.D. Cal. 2009)).

Courts in the Ninth Circuit have routinely held that "failure to state a claim" is not a proper affirmative defense. *See*, *e.g.*, *Vargas v. Cnty. of Yolo*, 2016 U.S. Dist. LEXIS 94793, 13-14 (E.D. Cal. July 19, 2016). Indeed, these courts have explained, "[f]ailure to state a claim is not a proper affirmative defense but, rather, asserts a defect in [plaintiffs'] prima facie case . .

ORDER
PAGE - 5

. [and] is more properly brought as a motion." *Vargas*, 2016 U.S. Dist. LEXIS 94793, *13-14 (quoting *Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 962-63 (E.D. Cal. 2012) (citing *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010)); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."). Accordingly, the Court grants Plaintiff's Motion for Partial Summary Judgment with respect to Defendant's first Affirmative Defense of failure to state a claim, and dismisses that defense.

   *2. Preemption*

   Plaintiff next argues that the Court should dismiss Defendant's eighth affirmative defense of preemption. Dkt. #50 at 18-22. Defendant responds that Plaintiff's claims are preempted and therefore this Court should grant summary judgment in its favor on that issue. Dkt. #57 at 16-19. The Court disagrees with Defendant.

   Defendant's eighth Affirmative Defense states: "Plaintiff's claims are preempted in whole or in part by the Commerce Clause of the U.S. Constitution, federal law, and/or federal regulations or related pronouncement by the U.S. Food and Drug Administration." Dkt. #51, Ex. P at 5, ¶ 8. Defendant asserts that Plaintiff's claims should be dismissed based on the doctrine of implied conflict preemption because federal regulations are in conflict with Washington state law. Dkt. #57 at 17-19.

   The Ninth Circuit Court of Appeals has set forth the principles surrounding conflict preemption:

> The Supremacy Clause makes the laws of the United States "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. "Put simply, federal law preempts contrary state law." *Hughes v. Talen Energy Mktg.*,

ORDER
PAGE - 6

*LLC*, 136 S. Ct. 1288, 1297, 194 L. Ed. 2d 414 (2016).  Federal judges, of course, are not constitutionally charged with making federal law.  Rather, that is primarily the role of Congress and it is thus "Congress rather than the courts that preempts state law."  *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011).  Our task as judges "is to ascertain Congress' intent in enacting the federal statute at issue," *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983), which "is the ultimate touchstone in every pre-emption case," *Hughes*, 136 S. Ct. at 1297.

Congress' intent to preempt state and local law may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992) (internal quotation marks omitted).  In other words, federal preemption "may be either express or implied." *Shaw*, 463 U.S. at 95.  Where the intent of a statutory provision that speaks expressly to the question of preemption is at issue, "we do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 136 S. Ct. 1938, 1946, 195 L. Ed. 2d 298 (2016) (internal quotation marks omitted).

Absent an express congressional command, a state law is preempted if it actually conflicts with federal law or if federal law so thoroughly occupies a legislative field that it is unreasonable to infer that Congress intended for supplemental state or local regulation.  *Cipollone*, 505 U.S. at 516.  A conflict giving rise to preemption exists "where it is impossible for a private party to comply with both state and federal law, . . . and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000) (alterations and internal citations omitted).  What is a sufficient "obstacle" to give rise to implied preemption is a matter of judgment to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.  *Id.* at 373.  Particularly where a statute regulates a field traditionally occupied by states, such as health, safety, and land use, a "presumption against preemption" adheres. *Wyeth v. Levine*, 555 U.S. 555, 565 n.3, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009).  We assume that a federal law does not preempt the states' police power absent a "clear and manifest purpose of Congress."  *Id.* at 565 (internal quotation marks omitted).

"[A]n agency regulation with the force of law [also] can pre-empt conflicting state requirements." *Id.* at 576.  Only specific agency rules carrying the force and effect of federal law may give rise to conflict

ORDER
PAGE - 7

> preemption, however, not "agency proclamations of pre-emption." *Id.*; *see also City of New York v. FCC*, 486 U.S. 57, 63, 108 S. Ct. 1637, 100 L. Ed. 2d 48 (1988). We determine whether an agency's rule has the force and effect of law "under the standard set forth in *United States v. Mead Corp.*, 533 U.S. 218, 234, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001), and its progeny." *Reid v. Johnson & Johnson*, 780 F.3d 952, 964 (9th Cir. 2015). The latter category of agency pronouncements about the impact of state and local law on federal statutory objectives is entitled to "some weight" though, weight proportional to its power to persuade. *Wyeth*, 555 U.S. at 577; *cf. Mead Corp.*, 533 U.S. at 234-35; *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944).

*SHAKA Movement v. County of Maui*, 842 F.3d 688, 699-700 (9th Cir. 2016).

For purposes of the instant motion, Defendant acknowledges that neither Congress nor the FDA has expressly preempted all state and local regulation of plasma collection. Dkt. #57 at 17. In fact, Defendant points to the U.S. Supreme Court's decision in *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985), wherein the Court held that the County's ordinances and regulations, which imposed donor testing and requirements beyond those contained in the federal regulations, and which were designed to protect the health of the donors, to ensure the quality of the plasma, and to protect the recipients of the plasma, were not preempted by the federal regulatory scheme because the County's requirements "do not imperil the federal goal of ensuring sufficient plasma." *Hillsborough County*, 471 U.S. at 722. However, Defendant argues that Washington State's Law Against Discrimination ("WLAD") cannot constitutionally co-exist with the federal regulatory scheme governing donor eligibility decisions and plasma collection, because requiring it to accept plasma from transgendered individuals would prevent it from meeting its obligations under the FDA's regulatory scheme and would stand in the way of the federal goal of protecting the nation's blood supply. Dkt. #57 at 18.

ORDER
PAGE - 8

Defendant focuses its arguments on the FDA policies about standards for conducting plasmapheresis, processing, storing and labeling plasma units, and for determining donor eligibility. Dkt. #57 at 19. Relying primarily on the MSM deferral policy, which discusses high risk donors such as gay men, and Minutes from various industry group meetings, Defendant asserts that prior to December of 2015 it was unclear how it was to assess donor eligibility for transgendered individuals, and therefore by not accepting donations from transgendered females (who were born male), it was in compliance with FDA guidance. *See* Dkt. #57 at 5-9 and 19. Those arguments demonstrate Defendant's mischaracterization of the relief sought by Plaintiff, and it misconstrues the FDA's regulatory scheme. For example, in 2009, the FDA apparently stated that risk must be the basis for the assessment of transgender donor eligibility. Dkt. #58, Ex. E at 3. In 2012, the FDA again apparently stated that risk must be the basis for transgender donor eligibility. Dkt. #58, Ex. L at 2-3. Nowhere has Defendant provided a guideline, regulation or law that requires the wholesale rejection of donations from transgendered individuals. Moreover, Plaintiff is not asserting that the WLAD requires Defendant to accept all donations from transgendered individuals without any risk assessment. Plaintiff simply asks Defendant to stop "deferring" donations based only on gender identity. As a result, the Court concludes that no conflict between FDA regulations and guidelines and Washington law.

That conclusion was reached by the United States District Court for the District of Minnesota in a nearly identical case before it. In *Scott v. CSL Plasma, Inc.*, Case No. C13-2616 (JNE/JJK), the Court rejected preemption arguments made by the same Defendant. *See* Dkt. #51, Ex. P. In the Minnesota case, involving a transgender individual, Defendant had relied on the same documents it presents in this case, and made the same assertion that it could

ORDER
PAGE - 9

not comply with FDA regulations and the Minnesota state discrimination law. *Id.* The court noted that the FDA's policy of deferring plasma donations from men who have had sex with men was not a bar to the plaintiff's claims because she, like Ms. Kaiser does here, had alleged that she had never had sex with a man either before or after her gender-reassignment surgery. *Id.* at 6-8. Subsequent to that ruling, the Court reiterated in rejecting summary judgment for Defendant that "a finding that CSL unlawfully discriminated against Scott on the basis of her transgender status would not, as CSL argued, pose an inherent conflict with any law, regulation, or even FDA guidance. . . ." *Scott v. CSL Plasma, Inc.*, 151 F. Supp.3d 961, 972 (D. Minn. 2015). Accordingly, the Court agrees with Plaintiff that Defendant's affirmative defense of preemption should be dismissed.[1]

   3. *Primary Jurisdiction*

Plaintiff next asks the Court to dismiss Defendant's affirmative defense of primary jurisdiction. Dkt. #50 at 22-24. Defendant's ninth affirmative defense asserts that "Plaintiff's claims are within the primary jurisdiction of the U.S. Food and Drug Administration and are inappropriate subjects for resolution by this Court or a jury." Dkt. #51, Ex. P at 5, ¶ 9. Defendant seeks summary judgment in its favor on this defense. Dkt. #57 at 19-21.

   The Ninth Circuit has explained:

> Primary jurisdiction is a prudential doctrine that permits courts to determine "that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). In evaluating primary jurisdiction, we consider "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction

---

[1] Defendant asks the Court to strike Exhibit C to the Declaration of Isaac Ruiz filed in support of Plaintiff's Reply brief. Dkt. #62. The Court DENIES Defendant's motion. First, the Court did not rely on Exhibit C to reach its conclusion on the preemption issue. Second, the Court is not persuaded by Defendant that Plaintiff included Exhibit C in an effort to circumvent the Court's local rule regarding the length of Reply briefs.

ORDER
PAGE - 10

of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781.

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015).  The Ninth Circuit has further noted:

> Not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction.  Rather, the doctrine is reserved for a "limited set of circumstances" that "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency."  *Clark*, 523 F.3d at 1114 (quoting *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002)) (internal quotation marks omitted).  Without doubt, defining what is "natural" for cosmetics labeling is both an area within the FDA's expertise and a question not yet addressed by the agency.
>
> Nonetheless, courts must also consider whether invoking primary jurisdiction would needlessly delay the resolution of claims.  *Reid v. Johnson & Johnson*, 780 F.3d 952, 2015 WL 1089583, at *12 (9th Cir. 2015); *United States v. Philip Morris USA Inc.*, 686 F.3d 832, 838, 402 U.S. App. D.C. 34 (D.C. Cir. 2012) ("The primary jurisdiction doctrine is rooted in part in judicial efficiency.").  Under our precedent, "efficiency" is the "deciding factor" in whether to invoke primary jurisdiction.  *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007).
>
> Common sense tells us that even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation.  Similarly, primary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make.  *See Amalgamated Meat Cutters & Butcher Workmen of N. Am.*, 381 U.S. at 686 ("[Primary jurisdiction] does not require resort to an expensive and merely delaying administrative proceeding when the case must eventually be decided on a controlling legal issue wholly unrelated to determinations for the ascertainment of which the proceeding was sent to the agency.") (internal quotation marks and citation omitted).

*Astiana*, 783 F.3d at 760-61.

In the instant matter, the Court agrees with Plaintiff that there is no issue that must be resolved that Congress has placed within the jurisdiction of the FDA.  *See* Dkt. #50 at 23.  The

ORDER
PAGE - 11

FDA cannot determine whether Plaintiff's rights were violated under the WLAD or under Washington's Consumer Protection Act ("CPA"). Defendant argues that because the FDA issues guidance with respect to the eligibility of transgender donors, Plaintiff's claims are within the primary jurisdiction of that agency. Dkt. #57 at 19-21. However, this Court is not persuaded. Indeed, that argument has already been rejected by another court. In *Scott*, *supra*, the District Court for the District of Minnesota declined to granted summary judgment in favor of Defendant on the issue of primary jurisdiction, explaining:

> CSL noted that the FDA released draft guidance in May 2015 specifically addressing the question of transgender donors' eligibility. It asserted that this fact demonstrates that the FDA is still actively considering the very issue in this case: whether transgender individuals should be eligible to donate plasma. *See* Willing Decl. Ex. Q, Dkt. No. 58-3. However, the issue before the Court in the current procedural posture, and the genuinely disputed issue of fact for the jury, is not whether a policy of rejecting all transgender donors for safety reasons is a legitimate business reason for sexual orientation discrimination. Rather, it is the narrow issue of whether CSL in fact had such a policy when it rejected Scott or whether CSL might have accepted Scott as a donor if the Nurse had called Corporate Medical Operations. This type of factual question is not within the special expertise of the FDA. Further, the recent FDA draft guidance merely proposes that "[i]n instances where a donor has asserted a change in gender identification, medical directors may exercise discretion with regard to donor eligibility." *Id.* This draft guidance does not govern, much less establish, the facts at issue here: whether CSL had a policy on November 17, 2008, that all transgender donors should be denied as high-risk or rejected Scott in particular because of a medical judgment.
>
> CSL has not persuaded the Court that the questions at issue in this case are more appropriate for the FDA to consider. The FDA has never issued direct guidance on the eligibility of transgender donors and, most recently, has proposed leaving the question within the discretion of medical directors, suggesting that one typical rationale for invoking the primary jurisdiction doctrine – promoting uniformity and consistency – is not compelling in this case. *U.S. v. W. Pac. R. Co.*, 352 U.S. 59, 64, 77 S. Ct. 161, 1 L. Ed. 2d 126, 135 Ct. Cl. 997 (1956). More significantly, this is not a case in which a court must evaluate the reasonableness of a tariff or the reasonableness of a railroad's requirement in light of its statutory duty to provide transport upon a reasonable request, in which agency expertise would benefit the court's analysis. *See id.* at 64; *Chlorine Inst.*, 792 F.3d at 911-12. The

ORDER
PAGE - 12

> narrow question of fact at issue here is not the type of question that requires the FDA's expertise.

*Scott*, 151 F. Supp.3d at 971-72.  This Court agrees that the issues before it are not the type of question that requires the FDA's expertise.  Accordingly, the Court also agrees with Plaintiff that Defendant's affirmative defense of primary jurisdiction should be dismissed.

    *4.  Plaintiff's CPA Claim*

Finally, the Court addresses Defendant's argument that the Court should grant summary judgment in its favor on Plaintiff's claim because it is exempted from the CPA.  Dkt. #57 at 21-23.  Defendant argues that Plaintiff's claim for a *per se* violation of Washington's CPA fails because she cannot establish a claim under the WLAD, but that, even if she has a WLAD claim, there is an exception under the CPA that applies.  *Id.*  Specifically, Defendant points to RCW 19.86.170, which states:

> Nothing in this chapter shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state, the Washington utilities and transportation commission, the federal power commission or actions or transactions permitted by any other regulatory body or officer acting under statutory authority of this state or the United States . . . PROVIDED, FURTHER, That actions or transactions specifically permitted within the statutory authority granted to any regulatory board or commission established within Title 18 RCW shall not be construed to be a violation of chapter 19.86 RCW . . . .

RCW 19.86.170.  In short, that statute provides that when an entity's actions are regulated by a federal agency, Washington law may apply an exemption disallowing CPA claims resulting from those actions.  *See*, *e.g.*, *Estes v. Wells Fargo Home Mortg.*, 2015 U.S. Dist. LEXIS 9359, 2015 WL 362904, at *5 (W.D. Wash. Jan. 27, 2015).

Defendant asserts that the FDA is indisputably a regulatory body that regulates plasma donations and therefore its determinations regarding donor eligibility are exempted from

ORDER
PAGE - 13

liability under the CPA. Dkt. #57 at 22. However, this Court has previously explained that RCW 19.86.170 "'does not exempt actions or transactions merely because they are regulated generally; the exemption applies only if the particular practice found to be unfair or deceptive is specifically permitted, prohibited, or regulated.'" *Estes*, 2015 U.S. Dist. LEXIS 9359 at *11 (quoting *Miller v. U.S. Bank of Wash., N.A.*, 72 Wn. App. 416, 420, 865 P.2d 536 (1994)). In this case, Plaintiff challenges Defendant's alleged policy of denying all transgender individuals from donating plasma. Dkt. #1 at ¶¶ 9 and 12-19. As discussed above, Defendant has not pointed to any regulation or law that requires it to prohibit donations based solely on gender identity. Accordingly, Defendant's request for summary judgment on Plaintiff's CPA claim is denied.

## IV.   CONCLUSION

Having reviewed Plaintiff's Motion for Partial Summary Judgment, the opposition thereto, Reply in support thereof, and the Sur-Reply, along with the supporting Declarations and Exhibits and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. #50) is GRANTED, and Defendant's 1) defense that this action has been settled; 2) affirmative defense of failure to state a claim, 3) affirmative defense of preemption and 4) and affirmative defense of primary jurisdiction are DISMISSED with prejudice.

2. Defendant's motion to strike Exhibit C to the Declaration of Attorney Ruiz is DENIED.

3. Defendant's request that it be granted summary judgment on each of the aforementioned defenses is DENIED.

//

ORDER
PAGE - 14

4. Defendant's request for summary judgment on Plaintiff's CPA claim is DENIED.

DATED this 2nd day of March 2017.

_____
RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 15